**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

\* \* \*

| | |
|---|---|
| Derrick Williams,<br><br>                        Plaintiff,<br><br>    v.<br><br>Mark Radi, et al.,<br><br>                        Defendants. | Case No. 2:20-cv-01535-JAD-BNW<br><br>**Screening Order and Order re [9] & [11]** |

Before the Court is a complaint that requires screening under the in forma pauperis statute and two motions for service. ECF Nos. 7, 9, and 11. Plaintiff has failed to allege plausible claims against the defendants, so his complaint will be dismissed with leave to amend. As a result, the Court will deny plaintiff's service motions. If plaintiff chooses to amend his complaint, he may renew his service motions once he states a plausible claim for relief.

**I.    Background**

Williams initiated this matter with an application to proceed in forma pauperis ("IFP") and an accompanying complaint. ECF No. 1. The Court screened Williams's original complaint, found that he failed to state any cognizable claims, and dismissed the complaint with leave to amend. ECF No. 5. Williams has since filed an amended complaint, and he asserts claims under 42 U.S.C. § 1983. ECF No. 7.

Williams alleges that on some unspecified date he was a passenger on a public transit bus when he offended two unnamed security guards with the following statement: "public servants need to be mindful on how they treat the public cause it can determine whether they make it home or not on a daily bas[is]!" *Id.* at 2. In response, the security guards—who worked for Marksman Security Agencies—asked Williams to exit the bus. *Id.* Williams did so "without resistance"

when the bus arrived at the stop located on the corner of Carson Boulevard and Casino Boulevard. *Id.*

The security guards followed Williams off the bus. *Id.* Although not entirely clear, Williams appears to allege that one of the security guards sprayed him with mace and brandished a metal rod "with intent to hit [Williams] with it." *Id.* Williams claims that he requested to file a complaint with Marksman Security Agencies but was denied due process. *Id.* Williams likewise tried to file a complaint with the Regional Transportation Center Southern Nevada Transit Department, but he was, again, denied due process. *Id.*

Based on these allegations, Williams asserts the following causes of action: (1) violation of the First Amendment right of Freedom of Speech; (2) violation of the Fourth Amendment right to be secure in his person against unreasonable search and seizure; (3) violation of the Eighth Amendment right to be free from cruel and unusual punishment; and (4) violation of the Fifth and Fourteenth Amendment right to due process. *Id.* at 1. He names the following defendants: "two Spanish males"; Radi Marks, owner of Marksman Security Agencies; RTC Southern Nevada Transit; and RTC Southern Nevada Board of Commissioners.

## II.  Screening standard

Upon granting a request to proceed *in forma pauperis*, a court must screen the complaint under 28 U.S.C. § 1915(e)(2). In screening the complaint, a court must identify cognizable claims and dismiss claims that are frivolous, malicious, fail to state a claim on which relief may be granted or seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2). Dismissal for failure to state a claim under § 1915(e)(2) incorporates the standard for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012). To survive § 1915 review, a complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The court liberally construes pro se complaints and may only dismiss them "if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Nordstrom v. Ryan*, 762 F.3d 903, 908 (9th Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678).

In considering whether the complaint is sufficient to state a claim, all allegations of material fact are taken as true and construed in the light most favorable to the plaintiff. *Wyler Summit P'ship v. Turner Broad. Sys. Inc.*, 135 F.3d 658, 661 (9th Cir. 1998) (citation omitted). Although the standard under Rule 12(b)(6) does not require detailed factual allegations, a plaintiff must provide more than mere labels and conclusions. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A formulaic recitation of the elements of a cause of action is insufficient. *Id.* Unless it is clear the complaint's deficiencies could not be cured through amendment, a pro se plaintiff should be given leave to amend the complaint with notice regarding the complaint's deficiencies. *Cato v. United States*, 70 F.3d 1103, 1106 (9th Cir. 1995).

### A.  Screening the Complaint

Section 1983 is not itself a source of substantive rights. *Albright v. Oliver*, 510 U.S. 266, 271 (1994). Rather, the statute provides a method for vindicating federal rights conferred elsewhere. *Id.* To state a claim under § 1983, a plaintiff must allege: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988).

#### 1.  Private conduct and § 1983 claims

The state-action element in § 1983 means that the statute does not reach private conduct, "no matter how discriminatory or wrongful." *Caviness v. Horizon Cmty. Learning Ctr., Inc.*, 590 F.3d 806, 812 (9th Cir. 2010). There exists a presumption that private individuals and entities do not act under color of state law within the meaning of § 1983. *Rabieh v. Paragon Sys. Inc.*, 316 F. Supp. 3d 1103, 1109 (N.D. Cal. 2018) (citing *Florer v. Congregation Pidyon Shevuyim, N.A.*, 639 F.3d 916, 922 (9th Cir. 2011), *cert denied*, 565 U.S. 1116 (2012)). Ultimately, the Court must assess whether the private party was "a willful participant in joint action with the State or its agents." *Stanley v. Goodwin*, 475 F. Supp. 2d 1026, 1037 (D. Haw. 2006) (citing *Kirtley v. Rainey*, 326 F.3d 1088, 1092 (9th Cir. 2003)). The Ninth Circuit has recognized four tests that a plaintiff can meet to identify state action: (1) public function; (2) joint action; (3) governmental compulsion or coercion; and (4) governmental nexus. *Kirtley*, 326 F.3d at 1092.

**a) Two Spanish males and Marksman Security Agencies**

Here, plaintiff has not stated plausible claims against two Spanish males and Marksman Security Agencies because he has not plausibly alleged state action under any of the four tests.

i. Public function

Beginning with the first test: "Under the public function test, when private individuals or groups are endowed by the State with power or functions governmental in nature, they become agencies or instrumentalities of the State and subject to its constitutional limitations." *Kirtley*, 326 F.3d at 1093. "Very few functions" fall into that category, according to the Supreme Court. *Manhattan Comm. Access Corp. v. Halleck*, 139 S. Ct. 1921, 1929 (2019). Those functions include running elections and operating a company town. *Id.* (collecting cases). And they do **not** include running sports associations and leagues, administering insurance payments, operating nursing homes, providing special education, representing indigent criminal defendants, resolving private disputes, and supplying electricity. *Id.* (collecting cases).

A state-appointed guardian ad litem, for example, does not meet the public function test. *Kirtley*, 326 F.3d at 1093. Under Washington law, a guardian ad litem traditionally has two functions: an advocate for the best interests of the child, and an independent source of information for the Court regarding the circumstances of the custody dispute. *Id.* Neither of these functions had ever been held to be a traditional or exclusive governmental function, so the test was not met. *Id.*

Here, the public function test is likewise not met. Plaintiff offers very few allegations about the security guards' duties. Providing security does not appear to be a function that has been held to be a traditional or exclusive governmental function, and nor has plaintiff alleged so. Therefore, the test is not met.

ii. Joint action

There is liability under the joint action test when "the state has so far insinuated itself into a position of interdependence with the private entity that it must be recognized as a joint participant in the challenge activity." *Parks Sch. Of Bus., Inc. v. Symington*, 51 F.3d 1480, 1486 (9th Cir. 1995). This occurs when the state knowingly accepts the benefits derived from

unconstitutional behavior. *McElroy ex rel. McElroy v. Tracy Unified Sch. Dist.*, 2008 WL 4754831, at *4 (E.D. Cal. Oct. 29, 2008). Or when there is a conspiracy or substantial cooperation between actors. *Id.* (citing *Brunette v. Humane Soc. Of Ventura Cnty.*, 294 F.3d 1205, 1211 (9th Cir. 2002)).

Here, plaintiff has not plausibly alleged joint action. Even assuming that plaintiff suffered a constitutional injury, he has not plausibly alleged that the government knowingly accepted a benefit derived from the security guards' behavior. Further, plaintiff has not plausibly alleged a conspiracy or substantial cooperation between the government and private defendants.

### iii. Compulsion

"The compulsion test considers whether the coercive influence or 'significant encouragement' of the State effectively converts a private action into a government action." *Stanley v. Goodwin*, 475 F. Supp. 2d 1026, 1039–40 (D. Haw. 2006) (citing *Kirtley*, 326 F.3d at 1094). Plaintiff has not alleged that the State coerced or significantly encouraged the security guards to allegedly harm plaintiff, so the test is not met here.

### iv. Governmental nexus

The nexus test is met when "there is such a close nexus between the State and the challenged action that the seemingly private behavior may be fairly treated as that of the State itself." *Id.* (citing *Kirtley*, 326 F.3d at 1095). For this test, the State must be significantly involved or actively participate in the alleged conduct. *Id.* The Ninth Circuit has recognized that "the governmental nexus test is the most vague of the four tests and its answer tends to track those of the other three tests." *Quezambra v. United Domestic Works of Am. AFSCME Local 3930*, 445 F. Supp. 3d 695, 704 (C.D. Cal. 2020) (citing *Kirtley*, 326 F.3d at 1094).

Here, plaintiff has not alleged sufficient facts to show a nexus between the government and the supposed constitutional violations alleged in the complaint. Further, plaintiff failed to meet the other three tests. Therefore, the governmental nexus test is not met.

* * * * *

In sum, the Court finds that plaintiff has failed to allege that the two Spanish security guards acted under color of state law. As a result, plaintiff failed to allege a necessary element of his § 1983 claims against these defendants. These claims are dismissed with leave to amend.

### b) Mark Radi

Plaintiff has failed to allege plausible claims against defendant Mark Radi. The only allegation specific to Radi is that he is the owner of Marksman Security Agencies. ECF No. 7 at 1. Marksman Security supposedly employed the two security guards who allegedly harmed plaintiff.

The Court has already found that, on the operative complaint, the guards were **not** acting under color of state law. Even if they were, Radi is not subject to liability under § 1983 simply because he owns the company employing the guards. Rather, "respondeat superior or vicarious liability will not attach under § 1983." *Stanley v. Goodwin*, 475 F. Supp. 2d at 1038 (*Tokuhama v. Cty. and Cnty. of Honolulu*, 751 F. Supp. 1385, 1394 (D. Haw. 1989)). Instead, employers are liable under § 1983 only for their own unconstitutional policies. *Id.* "The proper test is whether there is a policy, custom, or action by those who represent official policy that inflicts injury actionable under § 1983." *Id.*

Here, there is no basis in the complaint to believe that Radi is a state actor. Even if he were, plaintiff failed to allege the existence of any policy, custom, or action. Radi cannot be liable under § 1983 by virtue of his ownership of the security company. In the absence of specific allegations of Radi's participation in the events described in the complaint, plaintiff's claims fail.[1]

The result is no different if the Court were to analyze the claims against Radi as if he were a supervisor. Supervisors can be held liable under §1983, but only "if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011). Even if Radi were a supervisor (and plaintiff does not squarely

---

[1] It is unclear to the Court whether plaintiff means to assert claims against the guards' employer, Marksman Security Agencies, too. To the extent he does, the Court's respondeat superior analysis squarely applies to Marksman Security, and those claims are therefore dismissed with leave to amend.

allege so), the complaint lacks sufficient factual allegations to show Radi's personal involvement or connection to the constitutional violation. Accordingly, the claims against Radi are not plausible, and they will be dismissed with leave to amend.

**2. Section 1983 claims against RTC Southern Nevada Transit and RTC Southern Nevada Board of Commissioners**

Municipalities and other local government units are "persons" subject to § 1983. *Monell v. Dept. of Social Servs. of City of New York*, 436 U.S. 658, 690 (1978). A municipal entity is liable when its policy or custom inflicts in the injury. *Id.* at 694. To state a claim against a municipal entity, a plaintiff "must allege that the policy is the moving force behind the constitutional violation." *White v. Lee*, 2021 WL 698791, at *3 (D. Nev. Feb. 23, 2021) (citing *Dougherty v. Cty. of Covina*, 654 F.3d 892, 900 (9th Cir. 2011)) (internal quotations omitted). "Only if plaintiff shows that his injury resulted from 'permanent and well[-]settled' practice may liability attach for injury resulting from a local government custom." *McDade v. West*, 223 F.3d 1135, 1141 (9th Cir. 2000).

Here, plaintiff failed to state claims against RTC Southern Nevada Transit and the RTC commissioners in their official capacities. The official-capacity claims against the commissioners are, in effect, a suit against their office, *Will v. Mich. Dept. of State Police*, 491 U.S. 58, 71 (1989), so the above legal standard applies. However, plaintiff does not allege the existence of any policy or custom. Nor does plaintiff allege that this unidentified policy or custom was the moving force behind any constitutional violation. Therefore, the claims against RTC and the official-capacity claims against the commissioners are dismissed with leave to amend.

To the extent plaintiff means to sue the commissioners in their individual capacities, the claims still fail. "[A]n individual[-]capacity suit under § 1983 requires that the plaintiff allege personal participation in the constitutional violation on the part of the individual to subject that person to individual liability." *Fairbanks v. Canyon Cnty.*, 2018 WL 3370521, at *4 (D. Idaho July 10, 2018) (citing *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002)). Here, the complaint lacks any allegations about the commissioners' personal participation in the alleged constitutional violations. The claims are therefore dismissed with leave to amend.

### B. Instructions for amendment

Plaintiff is advised that he must specify which claims he is alleging against which defendants. Although the Federal Rules of Civil Procedure adopt a flexible pleading policy, Plaintiff still must give defendants fair notice of each of the claims he is alleging against each defendant. Specifically, he must allege facts showing how each named defendant is involved and the approximate dates of their involvement. Put another way, Plaintiff should tell the Court, in plain language, what each defendant did to him and when. "While legal conclusions can provide the framework of a complaint, they must be supported with factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

Further, Plaintiff's amended complaint must be short and plain. The simpler and more concise Plaintiff's complaint, the easier it is for the Court to understand and screen it. The Federal Rules also require this. Under Federal Rule of Civil Procedure 8, Plaintiff's amended complaint must contain "a short and plain statement of the claim showing that [Plaintiff] is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Each allegation must be simple, concise, and direct." Fed. R. Civ. P. 8(d)(1). "A party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances." Fed. R. Civ. P. 10(b). "[E]ach claim founded on a separate transaction or occurrence . . . must be stated in a separate count." *Id.*

Finally, if Plaintiff chooses to file an amended complaint, he is advised that an amended complaint supersedes the original complaint and, thus, the amended complaint must be complete by itself. *See Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1546 (9th Cir. 1989) (holding that "[t]he fact that a party was named in the original complaint is irrelevant; an amended pleading supersedes the original"). Plaintiff's amended complaint must contain all claims, defendants, and factual allegations that Plaintiff wishes to pursue in this lawsuit.

**II.    Service motions (ECF Nos. 9 and 11)**

Plaintiff also moves to effect service of process via the U.S. Marshals Service. ECF Nos. 9 and 11.  If a plaintiff proceeds in forma pauperis, then "the officers of the court shall issue and serve all process." 28 U.S.C. § 1915(d); *accord* Fed. R. Civ. P. 4(c)(3) (directing that if a plaintiff proceeds in forma pauperis, then "[a]t the plaintiff's request," the Court "must" order the U.S. Marshal to effect service).

However, the Court has already found that plaintiff failed to state a claim against any of the defendants, so plaintiff's complaint will be dismissed.  Without an operative complaint, there is no pleading to serve on any defendant.  Accordingly, plaintiff's service motions will be denied. *See also Karam v. Univ. of Ariz.*, 2019 WL 588151, at *2 (D. Ariz. Feb. 13, 2019) ("Even if the Court finds that a litigant is unable to pay, it has an additional, statutory obligation to screen a complaint before it may be served.").

**III.    Conclusion**

IT IS THEREFORE ORDERED that the entirety of plaintiff's amended complaint (ECF No. 7) is DISMISSED without prejudice but with leave to amend by August 27, 2021.  Failure to meet this deadline may result in a recommendation to the district judge that this case be dismissed.

IT IS FURTHER ORDERED that plaintiff's motion for service (ECF No. 9) is DENIED.

IT IS FURTHER ORDERED that plaintiff's motion for service (ECF No. 11) is DENIED.

DATED: July 28, 2021.

BRENDA WEKSLER
UNITED STATES MAGISTRATE JUDGE